E-FILED
Monday, 27 July, 2026  10:43:21 AM
Clerk, U.S. District Court, ILCD

**IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>　　　Plaintiff,<br><br>v.<br><br>DERRICK YOUNG,<br>　　　Defendant. | Case No. 2:09-cr-20067-JEH |

### Order

Now before the Court is the Defendant Derrick Young's motion for early termination of supervised release. (D. 91).[1] For the reasons stated *infra*, the motion is denied in part and granted in part. The motion is denied, but the travel restriction is removed.

### I

### A

Mr. Young's history with the criminal justice system began at age 14. (D. 29 at ECF p. 7). As a juvenile, Mr. Young pleaded guilty to various charges including battery, robbery, and burglary. *Id.* at ECF pp. 6-9. As an adult, Mr. Young continued to have convictions for offenses including burglary, aggravated battery, resisting a peace officer, battery, domestic battery, theft, and possession of cannabis. *Id.* at ECF pp. 9-15.

At age 24, Mr. Young pleaded guilty to aggravated battery with a firearm and the state court sentenced him to eight years in IDOC. *Id.* at ECF pp. 13-14. IDOC received him on March 5, 1998 and released him on parole on October 17, 2001. *Id.* at ECF p. 14. On July 9, 2002, IDOC readmitted him as a parole violator

---

[1] Citations to the electronic docket are abbreviated as "D. ___ at ECF p. ___."

and later released him on October 24, 2003. *Id.* His first controlled-substance conviction came at age 31, when he pleaded guilty to possession of a controlled substance with intent to deliver cocaine. *Id.* at ECF p. 15. The state court sentenced him to six years in IDOC and two years of supervised release. IDOC received him on June 29, 2005, and released him on parole on April 29, 2008. *Id.*

**B**

The instant offense for which Mr. Young is currently on supervised release arose from a traffic stop in Decatur, Illinois, on November 3, 2008. *Id.* at ECF p. 3. While on parole for a prior controlled substance offense, Mr. Young was pulled over in a rental car for failing to signal. *Id.* Mr. Young advised the officer that he was on parole. *Id.* at ECF p. 4. The officer then asked Mr. Young to step out of the vehicle and interlace his hands. *Id.* Shortly after, Mr. Young ran. *Id.* The officer pursued him and attempted to grab Mr. Young by his sweatshirt. *Id.* After unsuccessfully doing so, the officer yelled for him to stop and deployed his taser. *Id.* Mr. Young fell to the ground, was apprehended, and was handcuffed. *Id.*

As the officer helped Mr. Young stand, the officer found a small, clear plastic bag on the sidewalk where Mr. Young had been lying. *Id.* The bag contained 4.1 grams of marijuana. *Id.* After further searching Mr. Young, the officer found a clear plastic bag in his right front jeans pocket containing 42 individually wrapped packages of heroin, totaling 3.8 grams. *Id.* Officers also found a cigar filled with 1.1 grams of marijuana inside the vehicle. *Id.*

During an interview, Mr. Young stated that he wanted to go back to prison. *Id.* After being advised of the possible penalties for the offense, Mr. Young admitted that the heroin belonged to him, that he had been distributing heroin in Decatur for approximately three months, and that he intended to sell the heroin. *Id.*

On August 26, 2009, a criminal complaint was filed charging Mr. Young with possession of heroin with intent to distribute. *Id.* at ECF p. 3. On September 1, 2009, a one-count indictment was filed charging the same offense. *Id.* On August 6, 2010, Mr. Young appeared in court and pleaded guilty to the indictment without a written plea agreement. *Id.* On December 21, 2010, Judge McCuskey sentenced Mr. Young to 188 months in the Bureau of Prisons, followed by six years of supervised release. (D. 81 at ECF p. 1).

### C

On March 17, 2022, Mr. Young began his six-year term of supervised release. *Id.* at ECF p. 2. Since returning to the community on supervised release, Mr. Young has made meaningful steps toward reintegration. Within two months of his release from the BOP, Mr. Young secured employment at Archer Daniels Midland (ADM) through Austin Industrial in Decatur. (D. 91 at ECF pp. 1-2). As a skilled millwright, Mr. Young worked as a specialized industrial mechanic responsible for maintaining, diagnosing, and repairing stationary industrial machinery. *Id.* at ECF p. 2.  He held this job for nearly five years, earned $29 per hour, and received benefits through that employment. *Id.* Mr. Young is currently looking for employment. *Id.* He submitted numerous job applications and is considering obtaining an HVAC certification. *Id.* He also states that his skills as a millwright create opportunities for traveling work, but that his current supervised release travel restrictions make those opportunities difficult to pursue. *Id.*

Mr. Young also appears to have meaningful family and community ties in Decatur. *Id.* He rents an apartment in the area and reports that he is surrounded by family and friends. *Id.* His two daughters live nearby, and he describes himself as an active grandfather who sees his grandchildren almost daily. *Id.* at ECF pp. 2-3. His parents also live in the Decatur area, and Mr. Young reports maintaining good relationships with them. *Id.* at ECF p. 3. In addition, Mr. Young has been in

a committed relationship for approximately two years and recently helped care for his girlfriend after she underwent outpatient surgery. *Id.*

Mr. Young has also made some positive rehabilitative efforts related to his substance abuse issue. *Id.* In addition to successfully completing the Residential Drug Abuse Program while in BOP custody, Mr. Young has learned how to seek help while experiencing struggles outside of prison. *Id.* He began outpatient treatment through Pleasant Counseling and now attends both group and individual sessions. *Id.* at ECF pp. 3-4. Other than drug-related violations, Mr. Young has had no problems on supervised release in the four years he has been out. *Id.* at ECF p. 4. He has reportedly kept a good relationship with his probation officer and maintains stable housing. *Id.*

### D

Mr. Young tested positive for cocaine four times while on supervised release, with positive tests on September 15, 2025, October 14, 2025, March 24, 2026, and May 6, 2026. (D. 92 at ECF p. 2). Mr. Young also refused to submit to drug testing on September 27, 2025, and February 11, 2026, failed to attend mandated drug treatment on six occasions between March and May 2026, and failed to report to a required probation appointment on April 29, 2026. *Id.* The record also reflects seventeen positive marijuana tests since Mr. Young's release from BOP custody. *Id.*

Between filing his pro se motion for early termination and the Government's response, Mr. Young tested positive for cocaine twice, missed four drug treatment sessions, and failed to appear for a required probation appointment. *Id.* at ECF p. 3. Before filing its response, the Government conferred with the U.S. Probation Office, which does not support early termination based on Mr. Young's continued drug use, missed drug tests, missed treatment sessions, and missed probation appointment. *Id.* at ECF p. 4.

4

As it relates to employment, ADM terminated Mr. Young in January 2026 after a dispute with management over what he describes as unsafe working conditions. (D. 91 at ECF p. 2). According to Mr. Young, company policy permitted employees to stop work when conditions were unsafe. *Id.* Mr. Young states that he stopped working after determining that a task could not be performed safely but was instructed to continue working anyway. *Id.* A verbal dispute followed, and ADM ultimately terminated Mr. Young. *Id.* Mr. Young reports that he took the termination hard and has since struggled to secure new employment. *Id.*

### III

### A

Mr. Young argues that early termination of supervised release is warranted because he has successfully reintegrated into the community after serving more than four years of supervision. *Id.* at ECF pp. 5-6. He contends that he has maintained stable housing, established strong family and community ties, and demonstrated a commitment to rehabilitation by completing substance abuse treatment and continuing outpatient counseling following a positive drug test. *Id.* at ECF pp. 2-4. He further argues that continued supervision unnecessarily restricts his ability to pursue employment opportunities as a traveling millwright because he must obtain advance permission to travel outside the judicial district. *Id.* at ECF p. 4. Accordingly, Mr. Young requests that the Court terminate his term of supervised release pursuant to 18 U.S.C. § 3583(e)(1). *Id.* at ECF pp. 5-6.

### B

The Government argues that early termination is not warranted because Mr. Young has not demonstrated sufficient rehabilitation or compliance with the conditions of supervised release. (D. 92 at ECF p. 1). It contends that Mr. Young's repeated positive drug tests, missed drug tests, missed substance abuse treatment sessions, and failure to report for a probation appointment demonstrate a

continued need for supervision. *Id.* at ECF p. 6. The Government further argues that the relevant factors under 18 U.S.C. § 3553(a) weigh against early termination because continued supervision remains necessary to promote rehabilitation, deterrence, and vocational support. *Id.* at ECF pp. 6-8. Accordingly, the Government requests that the Court deny Mr. Young's motion for early termination of supervised release. *Id.* at ECF p. 8.

**IV**

Title 18, Section 3583(e)(1) governs a court's early termination of supervised release. Under that provision, a court may "terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release[]" if the court is satisfied that early termination is "warranted by the conduct of the defendant released and the interest of justice[.]" 18 U.S.C. § 3583(e)(1).

Once at least one year of supervised release has expired, the court must consider the factors set forth in 18 U.S.C. § 3553(a) that are incorporated into § 3583(e). Those factors include the nature and circumstances of the offense and the history and characteristics of the defendant, § 3553(a)(1); the need to afford adequate deterrence to criminal conduct, § 3553(a)(2)(B); the need to protect the public from further crimes of the defendant, § 3553(a)(2)(C); and the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment, § 3553(a)(2)(D). Pursuant to § 3583(e), the court must also consider the applicable guideline range, § 3553(a)(4); any pertinent policy statements, § 3553(a)(5); the need to avoid unwarranted sentencing disparities, § 3553(a)(6); and the need to provide restitution to any victims, § 3553(a)(7), to the extent those factors apply.[2]

---

[2] Sub-section 3553(a)(3) is excluded from the factors a court must consider as set forth in §3583(e), and subsections (a)(4) and (a)(5) only have applicability to imposition and revocation of a supervised release term, not an early termination. Subsection (a)(7) relates to restitution, which is inapplicable in this case.

6

The statute therefore requires more than a simple calculation of how much time remains on a defendant's supervised release term. Although the defendant must have served at least one year, the ultimate question is whether the defendant's conduct and the interest of justice show that continued supervision is no longer necessary in light of the statutory factors.

V

Although Mr. Young has made meaningful progress during supervised release, the present record does not support early termination. Mr. Young began supervised release on March 17, 2022, and for much of that time appears to have done well. He maintained stable employment for nearly five years, which is a significant accomplishment. Maintaining lawful employment while on supervised release is not always easy, and Mr. Young deserves credit for that stability. He also appears to have maintained stable housing, meaningful family support, and strong relationships with his children and grandchildren. Those are important indicators of successful reentry and demonstrate that Mr. Young has made meaningful progress while on supervision.

The Court is also sympathetic to the circumstances surrounding Mr. Young's loss of employment in January 2026. The Court does not minimize the importance of safe working conditions and would never suggest that an individual on supervised release should remain in an unsafe work environment. At the same time, continued employment provides structure, accountability, and financial stability, all of which support successful reintegration into the community. Mr. Young's ability to maintain skilled employment for nearly five years suggests that he has valuable work experience and marketable skills, and the Court is hopeful that he will be able to secure stable employment again.

The difficulty is that Mr. Young's recent conduct indicates that supervision continues to serve an important purpose. According to the Government, Mr.

7

Young has tested positive for cocaine on multiple occasions, missed or refused drug testing, missed several treatment sessions, and failed to report for a required probation appointment. The Court recognizes that some of these issues arose after Mr. Young lost his job. Losing stable employment can be destabilizing, and relapse and substance abuse are often complex challenges. But those circumstances reinforce, rather than diminish, the need for continued supervision. At present, supervision is providing drug testing, treatment accountability, structure, and support during a period when those resources appear to be particularly important.

Mr. Young's recent conduct is relevant not because supervised release should serve as additional punishment, but because it demonstrates that supervision continues to advance the permissible goals of rehabilitation and deterrence. *See Esteras*, 606 U.S. at 196–97. On this record, the Probation Office is not simply requiring Mr. Young to report for the sake of reporting. Rather, it remains actively engaged in addressing issues directly related to Mr. Young's sobriety, stability, and successful reentry into the community.

The Court does not discount the progress Mr. Young has made. His sustained employment, family support, and overall success during much of his supervision are encouraging, and they suggest that he is capable of returning to that path. But early termination requires the Court to conclude that continued supervision is no longer necessary. Given Mr. Young's recent drug use, missed testing, missed treatment sessions, missed probation appointment, and the Probation Office's opposition to early termination, the Court cannot make that finding at this time.

Accordingly, Mr. Young's motion for early termination is denied. If Mr. Young demonstrates a sustained period of compliance and stability going forward, the Court may give renewed consideration to a future motion for early termination.

**VI**

Although early termination is not warranted at this time, the Court's inquiry does not end there. Section 3583(e)(2) separately authorizes the Court, after considering the applicable § 3553(a) factors, to "modify, reduce, or enlarge the conditions of supervised release" at any time before the term of supervision expires or is terminated. 18 U.S.C. § 3583(e)(2). Thus, even where continued supervision remains necessary, the Court may still modify a particular condition if doing so better serves the rehabilitative and supervisory purposes of supervised release. *Id.*

The Seventh Circuit has consistently recognized that "just as a district court has wide discretion when imposing the terms of supervised release . . . so too must it have wide discretion in modifying the terms of that supervised release." *United States v. Sines*, 303 F.3d 793, 800 (7th Cir. 2002).

Any modification of a supervised release condition must be reasonably related to the relevant § 3553(a) factors, impose no greater deprivation of liberty than reasonably necessary, and remain consistent with applicable Sentencing Commission policy statements. 18 U.S.C. § 3583(d). In the context of travel-related modifications, courts have considered whether the proposed travel would place the defendant beyond meaningful supervision, whether the employment opportunity is concrete and legitimate, whether the modification would undermine other conditions of supervision, whether the Probation Office could continue to monitor the defendant while he travels, and whether the requested modification is no broader than necessary to accommodate the employment need. *See United States v. Broadfield*, 178 F.4th 1102, 1112 (7th Cir. 2026); *United States v. Nonahal*, 338 F.3d 668, 671 (7th Cir. 2003); *United States v. Hogan*, No. 05-30022, 2007 WL 3406917, at *2 (C.D. Ill. Nov. 13, 2007); *United States v. Marvin*, 106 F. Supp. 3d 969, 971 (N.D. Ind. 2015).

Here, the Court finds that a modification of Mr. Young's travel condition is appropriate. Mr. Young reports that he would like the ability to travel without seeking permission ten days in advance, both for personal reasons and for employment opportunities. In particular, Mr. Young states that, as a skilled millwright, he has opportunities to pursue work as a traveling millwright, but that the current travel restrictions limit him to employment within this district.

The Court finds that the existing travel condition appears to hinder Mr. Young's ability to pursue certain employment opportunities. Stable employment is an important part of successful reentry. Mr. Young's prior ability to maintain skilled employment for nearly five years suggests that he has marketable skills and that employment can provide him with structure, stability, and accountability. At the same time, modifying the travel condition does not eliminate the safeguards of supervision.

Mr. Young remains subject to all other conditions of supervised release, including reporting requirements, drug testing, substance abuse treatment, and any other conditions imposed by the Court. Those conditions continue to provide the Probation Office with meaningful oversight while allowing Mr. Young greater flexibility to pursue lawful employment. The requested modification is also no broader than necessary. It removes only the restriction requiring advance approval before travel, while leaving every other condition of supervised release intact. Thus, the requested modification does not place Mr. Young beyond meaningful supervision or undermine the remaining conditions of supervised release. Instead, it removes a condition that unnecessarily restricts his ability to obtain lawful employment while preserving the important rehabilitative and supervisory purposes of supervised release. Indeed, allowing Mr. Young to pursue broader employment opportunities advances the rehabilitative goals that supervised release is intended to promote.

Accordingly, the Court modifies Mr. Young's travel condition as follows: Condition 1 of Mr. Young's supervised release conditions that states "the defendant shall not knowingly leave the judicial district without the permission of the court or probation officer" is removed. This modification is intended to support Mr. Young's efforts to obtain lawful employment. All other conditions of supervised release remain in full force and effect.

**VII**

For the reasons stated *supra*, Defendant Derrick Young's motion for early termination of supervised release is DENIED IN PART AND GRANTED IN PART.

*It is so ordered.*

Entered on July 27, 2026

s/Jonathan E. Hawley
U.S. DISTRICT JUDGE

11